**Lester RALLO and Vera Rallo, Plaintiffs,**

v.

**NORTHWESTERN NATIONAL INSUR-ANCE COMPANY, the Phoenix Insurance Company, and New York Underwriters Insurance Company, Defendants.**

No. 63C 64(1).

United States District Court
E. D. Missouri, E. D.

Jan. 6, 1965.

James F. Koester, St. Louis, for plaintiffs.

J. H. Cunningham, Jr., Willson, Cunningham, McClellan & Gunn, St. Louis, Mo., for defendants.

HARPER, Chief Judge.

The plaintiffs brought suit against the defendants in the Circuit Court of the City of St. Louis to recover in Count One $12,500.00 insurance from the three companies, the details of which will be discussed further herein, and in Count Two sought to recover $25,000.00 from the defendants based upon a charge of conspiracy.

The case was duly removed to this court by the defendants based on diversity and the amount involved, the plaintiffs being citizens of Missouri and the defendants being non-resident corporations of the State of Missouri.

The general rule is that federal courts have no jurisdiction of an action on fire policies where the defendants are severally liable, as here, when the amount claimed against each insurer was less than the jurisdictional amount. Jewell v. Grain Dealers Mutual Ins. Co., 5 Cir., 290 F.2d 11; Application of Hardware Mutual Fire Ins. Co. et al., 9 Cir., 91 F.2d 13.

In this case, if the plaintiffs had only filed the first count the court would lack jurisdiction as each of the policies issued by each of the defendants is less than the jurisdictional amount. However, turning to Count Two we find a conspiracy charge alleged against all three non-resident defendants for well beyond the jurisdictional amount, which gives this court jurisdiction.

The testimony and exhibits disclose that the plaintiff, Lester Rallo, is in the real estate business, dealing primarily in speculative property. On June 1, 1962, he purchased from one Mitchell an old residential piece of property at No. 7 Benton Place in the City of St. Louis. Mitchell had purchased the property for approximately $5,500.00 in 1959. When Lester Rallo purchased the property from

Mitchell he paid him no money, but assumed a first deed of trust in the amount of $3,192.69, a second deed of trust in the amount of $2,500.00, back taxes of approximately $552.78, agreed to pay $277.00 in back payments on the deeds of trust, and was to make some repairs to the building.

Lester Rallo testified that he gave Mitchell a second deed of trust for $2,500.00, but upon further examination it was disclosed that he did not give a second deed of trust but assumed a second deed of trust of some $2,500.00. At the time the property was purchased it was insured for $9,000.00 in two companies, and the two policies were assigned to the plaintiffs. The defendant, The Phoenix Insurance Company, had issued an insurance policy on the property for $5,000.00, and the defendant, New York Underwriters Insurance Company, an insurance policy on the property for $4,000.00. There was a loss payable clause in the New York Underwriters policy in favor of the holder of the first deed of trust and a loss payable clause in the Phoenix policy in favor of the holder of the second deed of trust. In this connection, New York Underwriters has paid to the owner of the first deed of trust $3,384.60 and Phoenix has paid $2,800.00 to the holder of the second deed of trust, both deeds of trust having been assigned to the respective insurance companies.

Within a short time after Lester Rallo acquired the property some repairs were made to the property, there being some question about the amount, but the maximum amount spent was about $700.00. After the repairs were made Lester Rallo took out a third insurance policy with the Northwestern National Insurance Company for $3,500.00, making the total amount of insurance carried on the property by the three defendants $12,500.00. This policy was taken out on July 24, 1962. At the time this insurance was taken out no reference was made to the mortgages, and there is no loss payable clause in favor of the mortgagees in this third policy. Less than a month later, on August 21, 1962, a fire occurred, damaging the property, as a result of which this suit was brought.

Leslie Ibur, an insurance adjuster, testified on behalf of the plaintiffs that in his opinion the building was repairable and had an estimate that it would cost $17,435.94 to repair it, but this witness had never seen the property and the estimate was prepared by someone else. He was in the business of representing property owners in adjustments with respect to fire losses on a percentage basis, had represented Lester Rallo on other occasions and in the court's opinion his testimony with respect to the repair estimate was not worthy of belief.

Arthur Schneider, a real estate appraiser, testified on behalf of the defendants that the property before the fire occurred was worth $8,000.00, of which $2,000.00 represented the value of the real estate and $6,000.00 the building.

Two members of the Police Department from the Arson Squad testified that an examination of the premises after the fire indicated arson. Photographs of a considerable part of the damage were taken and introduced in evidence (Exhibits F to K, inclusive). An examination of Exhibit H shows the timing fuse which the police officers stated was used to set the fire. After the pictures were taken this timing fuse was taken by the police officers, but unfortunately it has either been misplaced or lost and could not be introduced at the trial.

The plaintiffs in rebuttal undertook to demonstrate that a fuse would, when lit, become ashes. The court is of the opinion that these two police officers, who have been experts in the fire field for years, knew a piece of timing fuse when they saw it, and their testimony in that regard is worthy of belief. The fire was confined to the hall, the stairs and kitchen on the first floor, and the stairway to the basement from the kitchen area. The officers testified that the fire in that particular area was an unusual one, that it left every appearance of having been a fire where accelerant had been used, and

their testimony further indicated that because of the severity of the fire before the fire department extinguished it the interior in the area involved was so badly burned that any evidence of the accelerant used was destroyed. In the court's opinion the testimony clearly establishes that the fire in question was not accidental and that arson was involved.

As was pointed out in Copeland v. American Cent. Insurance Company, 191 Mo.App. 435, 177 S.W. 820, in a civil case we are not dealing with the question of one being guilty of a crime, and the court is entitled to legitimate inferences from facts shown in evidence which satisfies the mind and conscience that the acts charged were perpetrated.

The testimony further disclosed that in October of 1962, Lester Rallo's brother-in-law had sustained a fire loss, and there the police department found evidence of arson. This man was a truck driver and the property had been sold to him by Lester Rallo, who had thereafter secured insurance well above the amount of the purchase price. The testimony further disclosed that in December of 1961, tenement property owned by Lester Rallo's brother suffered a fire loss, and the police indicated it was of incendiary origin. In May of 1964, another brother suffered a fire loss. In 1960, Lester Rallo had suffered a fire loss on Thomas Street.

When the above facts are considered, together with the fact that this property into which Lester Rallo had put no money, except for a minor amount for repairs, was insured for well beyond its value; the type of some testimony offered to support his claim (an insurance adjuster who adjusts fire losses for owners for a percentage of recovery who immediately contacts owners who have fire losses and keeps up with fires by office radio); Lester Rallo's testimony that he gave a second deed of trust on the property when it was purchased and then later changed his story (the exhibits disclosing without question that the second deed of trust was an old one); and that when the police talked to Rallo about

the fire and asked him about the insurance on the property he stated that he only had the same insurance that was on the property when he purchased it (which was untrue), the court is led to the conclusion that the fire in this case was of an incendiary origin, traceable to the plaintiff, Lester Rallo, and that plaintiffs are not entitled to recover on either the first or second counts of the petition.

The court accordingly finds in favor of the defendants. This memorandum opinion is adopted by the court as its findings of fact and conclusions of law and the clerk will prepare the judgment to be entered by the court.