OPINION OF THE COURT
MANSMANN, Circuit Judge.
This case comes to us by way of a petition for writ of mandamus filed by the defendants Liberty Mutual Insurance Company and Liberty Mutual Fire Insurance Company (collectively, “Liberty Mutual”). Faced with Liberty Mutual’s second notice of removal based on diversity jurisdiction, the United States District Court for the Western District of Pennsylvania granted Plaintiff Ward Trucking Company’s (“Ward”) motion for remand without giving Liberty Mutual an opportunity to respond. Liberty Mutual asserts that-in doing so, the district court acted without authority, and asks for our review. We are, therefore, once again required to address the parameters of a district court’s statutorily defined power to remand under 28 U.S.C. § 1447(c) and the scope of Congress’ prohibition on appellate review of remand orders set forth in 28 U.S.C. § 1447(d).
I.
On May 11, 1993, Ward instituted a civil action by writ of summons in the Court of Common Pleas of Allegheny County, Pennsylvania against Liberty Mutual, its insurers.[1] Thereafter, Ward filed a seven-count complaint in assumpsit and tort, asserting that Liberty Mutual mishandled claims, reserves and premiums under various insurance policies. Paragraph 52 of the complaint *744 stated that “the amount of damages resulting from the breach of duty and/or breach of contract are presently unknown ... ”, and the ad damnum clause in six of the seven counts requested an unspecified amount in damages in excess of the jurisdictional limits of the Arbitration Division of the Court of Common Pleas, currently $25,000.
Count III of the complaint set forth a claim under Pennsylvania’s Bad Faith Statute, 42 Pa.C.S.A. § 8371, which authorizes an action for an insurer’s bad faith toward its insured and allows for an award of interest on the claim at issue in the amount equal to the prime rate of interest plus 3%, punitive damages and the assessment of attorneys fees. Count Ill’s ad damnum clause requested “an amount exceeding the jurisdictional limits of [the Court of Common Pleas], inclusive of interest equal to prime plus 3%, punitive damages, costs and attorneys fees.”
On July 7, 1993, Liberty Mutual filed a notice of removal with the United States District Court for the Western District of Pennsylvania, alleging federal diversity jurisdiction under 28 U.S.C. § 1332. While both the writ and the complaint, which were attached to the notice of removal, stated that Ward is a Pennsylvania citizen and Liberty Mutual is a citizen of Massachusetts, neither document showed that Ward’s damages exceed $50,000, the amount in controversy requirement of federal diversity jurisdiction. Consequently, in an attempt to establish this monetary threshold, Liberty Mutual attached counsel’s affidavit to its removal notice, setting forth his personal belief that Ward’s damages were greater than $50,000.
On July 19, 1993, Ward filed a motion to remand, which was subsequently amended on August 2, 1993, challenging, inter alia, Liberty Mutual’s failure to show the requisite amount of damages for diversity jurisdiction. On July 28, 1993, Liberty Mutual filed a response to Ward’s original remand motion and on August 20,1993, responded to Ward’s amended motion. On November 3, 1993, the district court issued a memorandum opinion and order, granting Ward’s amended motion to remand and returning the case to state court. Citing our decision in Foster v. Mutual Life Marine & Inland Ins. Co., 986 F.2d 48 (3d Cir.1993),[2] the district court rejected counsel’s affidavit as evidence of Ward’s damages, and held that because the writ and complaint included in Liberty Mutual’s notice of removal did not establish the amount in controversy necessary to support federal jurisdiction, remand was in order.
In the course of subsequent discovery, Liberty Mutual obtained Ward’s response to a document request which stated that Ward incurred $156,045.89 in attorneys fees arising out of its dispute with Liberty Mutual for the years 1987 to 1993.[3]
On April 6, 1994, Liberty Mutual filed a second notice of removal, attaching Ward’s discovery response regarding attorneys fees for the purpose of establishing the required federal jurisdictional monetary amount. On April 28, 1994, Ward followed with a motion to remand, asserting, inter alia, that Liberty Mutual’s second removal notice failed to establish that Ward’s damages exceed $50,000. Without giving Liberty Mutual an opportunity to respond, the district court granted Ward’s motion. In a memorandum opinion and order dated May 9, 1994, the district court again cited to Foster, 986 F.2d at 48, and concluded that Ward’s discovery response could not be used to demonstrate the amount in controversy requirement of diversity jurisdiction. Referring to its prior remand opinion, the district court found that Liberty Mutual’s second removal suffered from the same deficiency as the first, and concluded that remand was required. Thus, *745 the district court issued an order returning the case to the state Court of Common Pleas.
Liberty Mutual then filed a petition for writ of mandamus, requesting that we direct the district court to vacate the May 9, 1994 remand order; reinstate the case and permit Liberty Mutual an opportunity to respond to Ward’s remand motion; and find that Ward’s discovery response constitutes “other paper” under the second paragraph of section 1446(b), which may establish removability. Ward, in turn, filed a motion for damages for frivolous appeal pursuant to Fed.R.App.P. 38.
II.
The threshold question before us is whether we have jurisdiction to review the district court’s remand order. We must determine whether the district court’s decision to remand, which was made without giving Liberty Mutual the opportunity to respond to Ward’s motion may be considered in light of the bar to appellate review of remand orders set forth in section 1447(d).
We turn first to the removal statutes, particularly the history of section 1447(d).
A.
Congress enacted a comprehensive statutory scheme for the removal of state court actions to federal court. 28 U.S.C. §§ 1441-1452. Section 1441(a) provides in pertinent part:
Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.
Section 1446 sets forth the procedure for removing a case to federal court, and section 1447 covers procedure after removal has occurred. Section 1447(c) specifically provides for the remand of a case that has been removed under section 1446 and delineates two categories for removal:- (1) a “defect in the removal procedure” and (2) the absence of subject matter jurisdiction:
(c) A motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.
Section 1447(d), which speaks to the re-viewability of remand orders, severely circumscribes our authority to review by providing that except for civil rights cases removed pursuant to 28 U.S.C. § 1443, “[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise....” By adopting section 1447(d) and its statutory predecessors, Congress sought to make the judgment of a district court remanding a case final and conclusive in order to avoid the delay caused by appellate review of remand decisions. United States v. Rice, 327 U.S. 742, 751-52, 66 S.Ct. 835, 838-39, 90 L.Ed. 982 (1946). In keeping with this policy, until 1976, ■ section 1447(d) was construed to prohibit review of all remand orders without exception. In re TMI Litigation Cases Consolidated II, 940 F.2d 832, 840 (3d Cir.1991), cert. denied, — U.S. -, 112 S.Ct. 1262, 117 L.Ed.2d 491 (1992).
In 1976, the Supreme Court decided Thermtron Prod., Inc. v. Hermansdorfer, 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976). There, the district court had remanded a case removed from state court on the basis of an overcrowded docket. The plaintiffs sought a writ of mandamus from the Court of Appeals for the Sixth Circuit compelling the district court to exercise jurisdiction over the action. The court of appeals denied the petition, relying on the bar to review in section 1447(d).
Reversing, the Supreme Court concluded that section 1447(d) operates to preclude review of only those remand orders which rely on the grounds contained in the controlling statute, section 1447(c). The Court held that sections 1447(c) and 1447(d) must be read together and that “only remand orders issued under § 1447(c) and invoking the *746 grounds specified therein ... are immune from review under § 1447(d).” Id. at 346, 96 S.Ct. at 590. Acknowledging that it had declared an exception to the seemingly absolute prohibition to review in section 1447(d), the Court stated:
There is no doubt that in order to prevent delay in the trial of remanded eases by protracted litigation of jurisdictional issues, ... Congress immunized from all forms of appellate review any remand order issued on the grounds specified in § 1447(c), whether or not that order might be deemed erroneous by an appellate court. But we are not convinced that Congress ever intended to extend carte blanche authority to the district courts to revise the federal statutes governing removal by remanding cases on grounds that seem justifiable to them but which are not recognized by the controlling statute. That justice may move more slowly in some federal courts than in their state counterparts is not one of the considerations that Congress has permitted the district courts to recognize in passing on remand issues. Because the District Judge remanded a properly removed case on grounds that he had no authority to consider, he exceeded his statutorily defined power; and issuance of the writ of mandamus was not barred by § 1447(d).
Id. at 351, 96 S.Ct. at 593 (citation omitted). Further, the Court recognized that mandamus was the “appropriate remedy to require the District Court to entertain the remanded action.” Id. at 352, 96 S.Ct. -at 593.
One year later, the Supreme Court revisited the issue of section 1447(d)’s prohibition on appellate review of remand orders in Gravitt v. Southwestern Bell Tel. Co., 430 U.S. 723, 97 S.Ct. 1439, 52 L.Ed.2d 1 (1977). In Gravitt, the plaintiffs, some of whom were citizens of Texas, filed an action in a Texas state court. After the plaintiffs dropped all claims against the only defendant alleged to be a Texas citizen, the remaining defendants removed the case to federal court on the basis of diversity jurisdiction. Following extensive discovery and pretrial activity, the plaintiffs uncovered a pleading that one of the defendants, Southwestern Telephone Company, an allegedly Missouri citizen, had submitted in an unrelated state court proceeding. In that pleading, Southwestern had averred that it was a Texas citizen. The plaintiffs filed a motion for remand, asserting that complete diversity did not exist. Refusing to hear contrary evidence from Southwestern and citing the doctrine of judicial estoppel, the district court held that Southwestern was estopped from alleging its Missouri citizenship as a basis for diversity jurisdiction, and granted the plaintiffs’ motion to remand on the grounds that subject matter jurisdiction was lacking. Southwestern commenced a mandamus proceeding to compel the district court to retain the case.
Concluding that a remand based on the doctrine of judicial estoppel was not contemplated by section 1447(c), the Court of Appeals for the Fifth Circuit held that the Supreme Court’s decision in Thermtron permitted review. The court noted that the district court relied exclusively on the doctrine of judicial estoppel to grant the remand without examining whether Southwestern was a Texas citizen, and held that the doctrine could not be used to defeat Southwestern’s statutory right to a federal forum. Accordingly, the court issued a writ of mandamus ordering the district court to determine whether the parties were in fact diverse. In a subsequent opinion, the panel determined that the district court was not required to inquire further into the diversity issue inasmuch as the plaintiffs did not challenge Southwestern’s Missouri citizenship as a factual matter, but stood squarely on the estop-pel theory as a matter of law to bar Southwestern from asserting diverse citizenship. Sitting en banc, the court concluded that the use of doctrine of judicial estoppel was erroneous, and issued a writ of mandamus directing that the remand order be vacated.
In a tersely worded, two-page per curiam opinion, the Supreme Court reversed, not mentioning the doctrine of judicial estoppel. Gravitt, 430 U.S. at 724, 97 S.Ct. at 1440. The Court stated that “[t]he District Court’s remand order was plainly within the bounds of § 1447(c) and hence was unreviewable by the Court of Appeals, by mandamus or otherwise”, and reemphasized the rule set down in *747 Thermtron that remands issued pursuant to section 1447(c) are not reviewable, “whether erroneous or not”. Id. at 723, 97 S.Ct. at 1440; Thermtron, 423 U.S. at 343, 96 S.Ct. at 589.
B.
Since Thermtron and Gravitt, we have analyzed the prohibitive reach of section 1447(d) in a wide variety of circumstances. At the outset, however, in order to address the specific reviewability issue presented here and determine which of our cases speak most clearly to the issue, we must decide the precise nature of the district court’s May 9, 1994 remand order. While Ward characterizes the order as “jurisdictional”, Liberty Mutual describes it as based on a “defect in removal procedure”. In Liberty Mutual’s view, the district court remanded under the first sentence of section 1447(c) merely because it objected to the discovery response Liberty Mutual attached to its notice of removal; not under section 1447(c)’s second sentence because it found that subject matter jurisdiction was lacking. Liberty Mutual contends that the district court never grappled with the question of jurisdiction, pointing to the absence of a finding regarding the amount in controversy between the parties as proof of its position.
Since the district court found that Liberty Mutual’s two removal notices were similarly deficient and incorporated the reasoning enunciated in its first opinion into its second opinion, we consider the court’s November 3, 1993 and May 9, 1994 opinions together to determine the basis for the court’s May 9, 1994 remand decision. We initially observe that the court began its November 3, 1993 analysis by noting that the statute authorizing removal provides that an action is removable only if it could have initially been brought in a federal court and that the party desiring removal bears the burden of establishing the requirements of diversity jurisdiction. The issue the district court confronted in each opinion was whether the papers that Liberty Mutual placed before it established the amount in controversy requirement of diversity jurisdiction. Despite Liberty Mutual’s position to the contrary, the court found that Liberty Mutual’s notices of removal did not show that Ward’s damages exceed $50,000. While it is true that the court refused to consider the information set forth in the discovery response attached to Liberty Ward’s second removal notice in reaching its May 9, 1994 decision, the court did not remand because it concluded that Liberty Mutual violated one of the formalities related to the removal process by including an inappropriate document in the notice. Rather, the court remanded because it concluded that Liberty Mutual failed to establish the threshold monetary amount essential to the court’s jurisdiction. We thus conclude that the court’s May 9, 1994 remand order rested on jurisdictional grounds.. See Baris v. Sulpicio Lines Inc., 932 F.2d 1540, 1544 (5th Cir.), cert. denied, 502 U.S. 963, 112 S.Ct. 430, 116 L.Ed.2d 449 (1991) (“As used in [section 1447(c) ], a ‘procedural’ defect is any defect that does not go to the question of whether the case originally could have been brought in federal district court ... ”).[4]
C.
Having concluded that the district court’s remand was jurisdictional, we turn for guidance to our eases which address the reviewa-bility under section 1447(d) of a remand order based on a district court’s determination that subject matter jurisdiction was lacking. In In re TMI Litigation Cases Consolidated II, 940 F.2d 832 (3d Cir.1991), cert. denied, 503 U.S. 906, 112 S.Ct. 1262, 117 L.Ed.2d 491 (1992), the plaintiffs commenced actions in a Pennsylvania state court for personal and economic injuries arising out of an incident at *748 the Three Mile Island nuclear facility. The defendants removed, asserting that since the plaintiffs’ claims arose under the Price-Anderson Amendments Act of 1988, 42 U.S.C. § 2011 et seq., those claims must be tried in federal court. The plaintiffs filed a motion for remand claiming that despite Congress’ explicit statement to the contrary in the Act, their claims did not “arise under” federal law. The district court remanded for lack of federal subject matter jurisdiction. The remand order was triggered by the court’s holding that the Act, which contained the grant of federal jurisdiction upon which the defendants relied for removal, was itself unconstitutional.'
In determining the threshold question concerning our jurisdiction, we reviewed the legislative and judicial history of section 1447(d) in great detail, and held that the remand order was subject to our review. In doing so, we concluded that because “the jurisdictional determination of the district court, resting as it did upon the conclusion that the entire statutory scheme authorizing removal is unconstitutional, was not the type of federal subject matter jurisdiction decision intended to be governed by the terms of or the policy underlying section 1447(c)”, section 1447(d) had no application. Id. at 845. In other words, since the ruling which triggered the remand order was not the routine type of jurisdictional determination involving the presence of diversity or a federal question which Congress entrusted to the district courts, our review was not prohibited by section 1447(d). Id. at 844.
Likewise, in Aliota v. Graham, 984 F.2d 1350 (3d Cir.), cert. denied, — U.S. -, 114 S.Ct. 68, 126 L.Ed.2d 37 (1993), we analyzed the reach of section 1447(d) in connection with an order remanding a removed case to a state court on the grounds that federal jurisdiction was lacking. There a defamation action had been filed in a Pennsylvania state court against five federal employees in their individual capacities. After the case was removed to federal court under section 2679(d) of the Westfall Act, 28 U.S.C. § 2671 et seq., the United States Attorney for the Western District of Pennsylvania, exercising the authority delegated by the Attorney General of the United States, certified that the five individual defendants were acting within the scope of their employment. The United States was then substituted as the sole defendant. The plaintiffs filed a motion to remand and a motion to strike the substitution of the United States, arguing that the individual defendants had not been acting within the scope of their employment when they allegedly made the defamatory comments. After conducting an evidentiary hearing, the district court entered an order striking the substitution and remanding the case to the state court. The United States filed a notice of appeal,[5] as well as a petition for mandamus seeking review of the remand.
In deciding whether the remand order was reviewable, we initially analyzed the Westfall Act and its provisions regarding removal, and determined that when a tort suit is filed in a state court and the Attorney General certifies that the employee was acting within the scope of his employment and removes the ease, the district court does not have authority to remand on the grounds that the Attorney General’s certification was erroneous. Id. at 1356. This determination was dictated by the terms of the Westfall Act which express Congress’ intent that subject matter jurisdiction is conclusively established upon the Attorney General’s certification. Id. We concluded that the district court exceeded its statutorily defined powers in section 1447(c) in remanding the ease because there was no jurisdictional question before it, and held that section 1447(d) did not bar review. Id. at 1357.
Before we decided the merits of the dispute, we noted, however, that this case stood in “marked contrast to the normal jurisdictional decisions made in connection with remand ... thus ... fall[ing] outside the types of cases section 1447(d) was intended to cover”, and cautioned that “[i]t [did] not follow from our decision that anytime the district court misinterprets a jurisdictional statute *749 we have the authority to review the remand decision ... [since] [s]uch an exception would obviously swallow the rule.” Id. Thus, our holding was limited to the “narrow situation where the district court has relied on a factor in its jurisdictional analysis that Congress intended to exclude from consideration of the jurisdictional issue.” Id.[6]
We again had the opportunity to examine the limits of section 1447(d) in connection with a jurisdictional remand order in Carr v. American Red Cross, 17 F.3d 671 (3d Cir. 1994). Carr had commenced a personal injury action in the state courts to recover damages from Red Cross and the Osteopathic Medical Center of Philadelphia arising out of an HIV-injected blood transfusion he received during an operation. Red Cross invoked its federal charter and filed a notice of removal to the district court. Acting sua sponte, the district court remanded the case to the state court, rejecting Red Cross’ contention that its charter automatically conferred federal jurisdiction over civil actions to which it is a party. After remand, Carr filed an amended complaint. In its answer, Osteopathic asserted a cross-claim for contribution and indemnity against Red Cross. Following the Supreme Court’s decision in American Nat. Red Cross v. S.G., — U.S. -, 112 S.Ct. 2465, 120 L.Ed.2d 201 (1992), which held that the Red Cross charter confers jurisdiction over civil cases to which Red Cross is a party, Red Cross again removed the action to the district court. Carr then filed a motion to dismiss Red Cross from the ease and a motion for remand to the state court, asserting that the district court no longer had jurisdiction as a result of a joint tortfeasor release that Carr had given Red Cross. The district court granted Carr’s motions for dismissal and remand on the basis that once Red Cross entered into the release with Carr, federal subject matter jurisdiction no longer existed. Osteopathic filed an appeal[7] and a petition for writ of mandamus directing the district court to vacate the remand order.
In considering whether section 1447(d) permitted our review, we cited our holdings in TMI Litigation and Aliota that section 1447(d) bars review of remand orders based on the routine jurisdictional determinations that Congress intends for the district courts to make. Id. at 682. Recognizing that we were presented with a “garden-variety, routine jurisdictional determination”, we nonetheless expanded our remand reviewability principles and announced that “where a separable and final determination has been made by the district court, whether substantive or jurisdictional, which determination triggers remand, we will review both the underlying final order and the remand order itself.” Id. at 682-83. Our decision to address the remand was based upon our serious concern that unless the remand order were reviewed, Osteopathic would not have been able to obtain review of the district court’s preceding order of dismissal, and the state court would have been obligated to give full faith and credit to the unappealed decision of the federal court. Id. at 683.
III.
With the principles enunciated in Thermtron, Gravitt and our own cases interpreting the reach of section 1447(d) in mind, we turn to the remand order before us. To determine whether we have the authority to review despite section 1447(d)’s prohibition, we consider two interrelated questions: first, was the district court’s order of the type that Congress intended to shield from appellate review under section 1447(d); and second, did the district court act consistently with its statutory authority defined in section 1447(c).
The district court’s decision regarding Liberty Mutual’s failure to establish the monetary amount essential to diversity jurisdiction is precisely the type of routine and regular jurisdictional decision that we determined in *750 TMI and in Aliota Congress expected the district courts to make in removal cases and intended to insulate from challenge by enacting section 1447(d). Further, the district court’s remand order was not made in the context of a separable and final determination, so that the addition to reviewability that we announced in Carr does not apply. In our view, this case is most analogous to and controlled by Gravitt. As in Gravitt, the district court here determined that a basic element of diversity jurisdiction was lacking, and issued a remand order that falls “plainly within the grounds of § 1447(c)”. 430 U.S. at 723, 97 S.Ct. at 1440. Therefore, under Thermtron, the court’s order is shielded from review by section 1447(d). 423 U.S. at 336, 96 S.Ct. at 585-86. See Bregman v. Aiderman, 955 F.2d 660 (11th Cir.1992) (even where the district court’s remand order was issued without a finding as to whether diversity of citizenship in fact existed and could have been mistaken, appellate review was barred by section 1447(e) since the order was based on a lack of subject matter jurisdiction, not a defect in removal procedures).
IV.
Additionally, we conclude that section 1447(c) authorizes the district court to remand as it did, without affording Liberty Mutual an opportunity to respond to Ward’s motion. As we must, we start with the plain language of the statute — “[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded” — and note that it allows and indeed compels a district court to address the question of jurisdiction, even if the parties do not raise the issue. Moreover, the' general rule that federal courts have an ever-present obligation to satisfy themselves of their subject matter jurisdiction and to decide the issue sua sponte applies equally in removal cases. Steel Valley Auth. v. Union Switch and Signal Div., 809 F.2d 1006, 1010 (3d Cir.1987), cert. dismissed, 484 U.S. 1021, 108 S.Ct. 739, 98 L.Ed.2d 756 (1988). See also American Policyholders Ins. Co. v. Nyacol Products, Inc., 989 F.2d 1256, 1258-59 (1st Cir.1993), cert. denied, — U.S. -, 114 S.Ct. 682, 126 L.Ed.2d 650 (1994); Ziegler v. Champion Mortg. Co., 913 F.2d 228, 229 (5th Cir.1990). Thus, since a motion and response are not required (ie., are not the basis) for jurisdictional remand orders under section 1447(c), the district court did not exceed its statutory authority by not waiting for a response from Liberty Mutual. Stated alternatively, the absence of Liberty Mutual’s response did not deprive the district court of its statutory power to remand once it determined that subject matter jurisdiction was lacking.
• In support of reviewability, however, Liberty Mutual contends that the district court exceeded its section 1447(e) authority by breaching rules of fundamental fairness in not permitting it to respond. Assuming arguendo that the process by which the district court remanded was unfair and also violative of established legal principles, it does not follow that Liberty Mutual’s argument prevails, for it essentially equates error with unauthorized action. Were this so, then every erroneous remand decision would be reviewable, and section 1447(d) would have no meaning. If Thermtron and Gravitt teach nothing else, they instruct that when a district court exercises its power to remand under section 1447(e), section 1447(d) allows a district court to err; it necessarily follows that section 1447(d) also allows a district court to be procedurally unfair. Just as section 1447(d) prohibits our review of the merits of a remand order that falls within the parameters of section 1447(c), it prohibits our review of the manner by which such an order was rendered.
Furthermore, our decision is in keeping with the policy of minimizing delay which underlies the section 1447(d) bar to review. If, despite section 1447(d)’s prohibition, parties opposing remand are permitted to invoke appellate review upon claims of a district court’s unfairness, the potential for disruption and delay, which Congress sought to minimize by enacting section 1447(d), would be far-reaching.
Thus, we hold that review of the district court’s remand order in this case is barred by section 1447(d). No matter how faulty we might consider the district court’s reasoning or methods, section 1447(d) prohibits us from *751 reviewing an action the district court was empowered to take, and one that Congress intended to be final. The dissent correctly points out that our opinion does not require a district court to grant a motion for remand on jurisdictional grounds without waiting for a response; and indeed, our decision should not be read as an imprimatur on the district court’s actions. This is a matter of applying Congress’ intent in enacting the removal statutes, and it is here where we and the dissent part ways. Accordingly, having determined that we do not have jurisdiction to review, we will not address the substance of the questions presented in Liberty Mutual’s petition.
V.
Ward requests that we impose damages under Federal Rule of Appellate Procedure 38 against Liberty Mutual for having filed the petition for writ of mandamus. Ward characterizes the petition as frivolous and asserts that the issue Liberty Mutual raises is completely lacking in merit. Rule 38 states:

Damages for Delay

If a Court of Appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee.
Fed.R.App.P. 38.
We employ an objective standard in determining whether an appeal is frivolous. Hilmon Co. (V.I.) v. Hyatt Int'l, 899 F.2d 250, 253 (3d Cir.1990). We impose damages under Rule 38 only when an appeal is frivolous. Mellon Bank Corp. v. First Union Real Estate Equity and Mortg., 951 F.2d 1399, 1413 (3d Cir.1991). We find that Liberty Mutual raised a novel question in its petition regarding the parameters of sections 1447(c) and 1447(d), and presented a meritorious argument in favor of reviewability. Thus, we will not impose Rule 38 damages against Liberty Mutual.
VI.
Because we do not have jurisdiction to review under 28 U.S.C. § 1447(d), we will dismiss Liberty Mutual’s petition for writ of mandamus. Having determined that Liberty Mutual’s petition was not frivolous, we will deny Ward’s motion for damages pursuant to Fed.R.App.P. 38.

. The parties are engaged in two other lawsuits. On May 24, 1991, Ward commenced an equity action in the Court of Common Pleas of Blair County, Pennsylvania against Liberty Mutual, alleging breach of fiduciary and contractual duties, and seeking an accounting and a declaration of the amount of premiums, if any, Ward owes to Liberty Mutual. This action has since been transferred to Allegheny County, Pennsylvania. On June 11, 1993, Liberty Mutual commenced an action against Ward in the United States District Court for the Eastern District of Pennsylvania, alleging that Ward failed to pay a past-due insurance premium.

. In Foster, after affirming a remand order which was based on the doctrines of abstention and comity, we took the opportunity to resolve the question as to when the thirty-day period for removal in the first paragraph of 28 U.S.C. § 1446(b) is triggered. We decided that the time limit for removal is triggered when a writ of summons, praecipe or complaint provides adequate notice to the defendant of federal jurisdiction. 986 F.2d at 54.

. By asking for the amount of fees Ward incurred over a number of years prior to the 1993 commencement of the Allegheny County, Pennsylvania, action, the discovery request apparently was not limited to this action. In its brief, Ward clarifies that the $156,045.89 represents fees incurred in all three of the parties' lawsuits. See n. 1, supra.

. In discussing the alternative grounds for remand set forth in section 1447(c), Professor Moore has explained that section 1447(c) “makes a distinction between formal defects in removal procedure ... [and] lack of subject matter jurisdiction", and has noted that “[a] motion to remand [under the first sentence of section 1447(c)] must be made within 30 days after removal, if the objections are of a character that can be waived, such as formal and modal matters pertaining to the procedure for removal or the non-removability of a proceeding otherwise within federal jurisdiction.” 1A J. Moore & B. Ringle, Moore’s Federal Practice § 0.168[4.-1] at 642, 644 (2d ed. 1993) (footnotes omitted).

. We concluded that the district court's, order resubstituting the originally named defendants in place of the United States was reviewable by way of an appeal under 28 U.S.C. § 1291. 984 F.2d at 1352-54.

. Guided by our decision in Aliota, we subsequently held in Powers v. Southland Corp. 4 F.3d 223 (3d Cir.1993), that section 1447(d) did not bar our review of a portion of a district court's jurisdictional remand order granting the plaintiff a relation back amendment because it was separate from and logically preceded the remand decision. Id. at 226-30.

. We concluded that the district court's order dismissing Red Cross was reviewable under 28 U.S.C. § 1291. 17 F.3d at 675-79.